# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

THE ASYLUM CLINIC KANSAS CITY, et al.,

        Plaintiffs,

v.

KANSAS CITY, MISSOURI IMMIGRATION COURT, et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 4:26-CV-00224-BCW

## <u>ORDER</u>

Before the Court is the Government's Motion to Dismiss Plaintiffs' Civil Complaint. (Doc. #14). The Court, being duly advised of the premises, grants in part and denies in part said motion.

## BACKGROUND

On March 17, 2026, Plaintiffs The Asylum Clinic Kansas City ("ACKC"), Harmeet Singh, Virampreet Singh, Plinio Naky Soto Pena, and Osmin Alsonso Vega Alverez (collectively "Plaintiffs") filed their Civil Complaint for Declaratory, Mandamus, and Injunctive Relief. (Doc. #1). In the complaint, Plaintiffs challenge "a federal detention policy that is being applied in a manner that forces detained noncitizens to repeatedly file individual habeas petitions in order to obtain relief that federal courts have already determined the law requires." Id. at 1. Plaintiffs name the Kansas City, Missouri Immigration Court ("KC Immigration Court"), the Executive Office of Immigration Review ("EOIR"), Todd Blanche,[1] Markwayne Mullin,[2] and the Board of Immigration Appeals ("BIA") (collectively the "Government") as defendants.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Todd Blanche is substituted for Pam Bondi as defendant in this suit.
[2] Pursuant to Fed. R. Civ. P. 25(d), Markwayne Mullin is substituted for Kristi Noem as defendant in this suit.

1

Since 1996, the Government allowed noncitizens who had been living in the United States to be released on bond or parole under 8 U.S.C. § 1226(a), while applying mandatory detention under 8 U.S.C. § 1225(b)(2)(A) to "arriving aliens." (Doc. #1 at 3). In July 2025, the Government announced a new policy: all "applicants for admission," as defined in § 1225(a)(1), would be subject to mandatory detention under § 1225(b)(2)(A). Thus, those noncitizens already present in the United States would be treated in the same manner as arriving aliens, regardless of individual circumstances. The Government announced that "[e]ffective immediately, it is the position of [the Department of Homeland Security ("DHS")] that such aliens are subject to detention … and may not be released from [Immigration and Customs Enforcement ("ICE")] custody except by [Immigration and Nationality Act ("INA")] § 212(d)(5) parole …. These aliens are also ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge." Id. at 3-4.

In September 2025, the BIA issued its decision in Matter of Yajure Hurtado, 29 I&N. Dec. 216 (BIA Sept. 5, 2025), which upheld DHS's new interpretation of the detention statutes (§ 1225(b)(2)(A) and § 1226(a)) and ruled that immigration judges lacked jurisdiction to consider release on bond for noncitizens detained as "applicants for admission" under § 1225, even if those individuals had been living in the United States and were previously granted bond hearings under § 1226(a). Id. at 4. The Government began detaining noncitizens without notice or an opportunity to be heard, regardless of individual circumstances.

In the wake of Matter of Yajure Hurtado, detainees across the country challenged their detention under this policy through habeas corpus petitions. Id. at 5. A majority of district courts concluded that noncitizens apprehended in the interior of the United States were entitled to a bond hearing or release. Id. at 8-9. In this District, the Government has complied with the Court's orders so long as specifically ordered by the Court in an individual habeas action. Id. at 6-8. Despite the

2

general consensus, the Government continues to deny bond hearings to other detainees unless those detainees independently file a habeas petition and obtain individual court orders.

Plaintiffs contend the Government has effectively "adopted a position that violates the law unless they are required to follow it in a case-by-case basis." Id. at 5. Plaintiffs seek equitable relief to end the piecemeal litigation and require the Government to administer the detention statutes consistent with the Court's rulings without resorting to individual habeas litigation. Id. at 6. Plaintiffs do not seek relief on behalf of a nationwide class; rather, they limit the requested relief to the administration of the detention statutes within the jurisdiction of the KC Immigration Court. Id. at 7.

Plaintiff pleads five causes of action: (I) Violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(1) – Agency Action that is Unlawfully Withheld; (II) Mandamus Action to Compel Officers to Perform their Duty; (III) Procedural Due Process Violation; (IV) Substantive Due Process Violation; and (V) Violation of APA, 5 U.S.C. § 706(2) – Vacatur of the BIA's Decision in Matter of Yajure Hurtado.

On April 1, 2026, the Government filed the instant motion to dismiss following the Court of Appeals for the Eighth Circuit's March 25, 2026 decision in Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). (Doc. #14). In Avila, a split panel of the Eighth Circuit held that § 1225(b)(2)(A) "mandates the detention of unadmitted aliens already present inside the United States" and does not require the Government provide them a bond hearing, regardless of how long the noncitizen has been present in the country. 170 F.4th at 1136. The Government argues that, after Avila, none of Plaintiff's claims are legally viable. (Doc. #14 at 5).

3

**LEGAL STANDARD**

Rule 12(b)(6) governs dismissal motions for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court treats all well-pleaded facts as true and grants the non-moving party all reasonable inferences from the facts. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation" and such "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

A Rule 12(b)(6) motion should be granted only if the non-moving party fails to plead facts sufficient to state a claim "that is plausible on its face" and would entitle the party to the relief requested. Twombly, 550 U.S. at 570. "A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Wilson v. Ark. Dep't of Human Servs., 850 F.3d 368, 371 (8th Cir. 2017).

**ANALYSIS**

The claims asserted in the complaint generally fall into two categories: violations of the INA and constitutional due process violations. The Government argues Avila forecloses all of Plaintiffs' claims. (Doc. #14). Plaintiffs concede they no longer have a basis under the INA for the claims after Avila but argue that each claim rises and falls with the same constitutional analysis notwithstanding the statutory construction. (Doc. #15).[3]

---

[3] The parties did not address the standing issues in their briefing on the instant motion to dismiss, and therefore, the Court likewise declines to discuss standing at this juncture.

## A. Plaintiffs' due process claims (Counts III and IV) survive <u>Avila</u>.

Counts III and IV assert claims arising under the Fifth Amendment's Due Process Clause. (Doc. #1 at 37-40). <u>Avila</u> did not reach the due process issues presented by Plaintiffs. <u>Avila</u>, 170 F.4th at 1140 n.8 (Erickson, J., dissenting) (noting several district courts within the Fifth Circuit granted habeas relief to immigration detainees for due process violations after that court held § 1225(b)(2)(A) controlled). Since <u>Avila</u>, the Court has ruled in "as-applied" habeas challenges that the Government's new policy, as stated in <u>Matter of Yajure Hurtado</u>, violates the Due Process Clause by depriving the petitioner of his or her interest in being free from civil detention, which the petitioner gained after living in the interior of the United States and establishing substantial connections with the country. See <u>Lugo Echevarria v. Arnott</u>, No. 6:26-CV-03217-BCW, Doc. #7 (W.D. Mo. May 1, 2026); <u>Lnu v. Arnott</u>, No. 6:26-cv-03211-SRB, Doc. #7 (W.D. Mo. April 20, 2026); <u>Rocha Medina v. Arnott</u>, No. 6:26-cv-3170-MDH, 2026 WL 915582 (W.D. Mo. Apr. 3, 2026).

The complaint in the above-captioned action plausibly alleges that the Government has violated Harmeet Singh's, Virampreet Singh's, Plinio Naky Soto Pena's, and Osmin Alsonso Vega Alverez's (collectively the "individual Plaintiffs") due process rights. The individual Plaintiffs have resided continuously in the United States for some time and established substantial connections with the country through family relations, legal employment, and/or release into the country by the Government. (Doc. #1 at 24-26, 31). The Government apprehended each individual Plaintiff in the interior of the United States without notice and has detained them without an opportunity for a meaningful hearing. <u>Id.</u> Like the petitioners in the habeas cases, the individual Plaintiffs have acquired a liberty interest protected by the Due Process Clause. <u>Lugo Echevarria</u>, No. 6:26-CV-03217-BCW, Doc. #7 at 8-9; <u>Lnu</u>, No. 6:26-cv-03211-SRB, Doc. #7 at 3; <u>Rocha</u>

<u>Medina</u>, 2026 WL 915582, at *2. Plaintiffs have sufficiently stated a facial due process challenge to the Government's new policy.

> **B. After <u>Avila</u>, Plaintiffs fail to state claims arising under the INA in Counts I, II, and V, but the Counts may proceed as constitutional claims.**

In Count I, Plaintiffs request that the Court compel the Government to provide individualized custody hearings pursuant to the INA, 8 U.S.C. § 1226(a), without requiring individual habeas petitions. (Doc. #1 at 34-35). In Count II, Plaintiffs seek a writ of mandamus to compel the Government to treat them as detainees under § 1226(a) and provide them individualized bond hearings, without requiring individual habeas petitions. <u>Id.</u> at 35-37. In Count V, Plaintiffs ask the Court to vacate the BIA's decision in <u>Matter of Yajure Hurtado</u>. <u>Id.</u> at 40-44.

<u>Avila</u> forecloses Plaintiffs' claims that the Government's new policy violates the INA. <u>Avila</u>, 170 F.4th at 1136. This Court is bound by <u>Avila</u> and cannot provide relief for the claims arising under the INA.

In opposition to dismissal, Plaintiffs argue that Counts I, II, and V, though alleged as INA-related claims, also raise constitutional claims stemming from substantive rights. (Doc. #15). While these three claims do not explicitly state that the Constitution or the Due Process Clause has been violated, the claims cite provisions of the APA and the Mandamus Act which provide relief for both statutory and constitutional violations. <u>See</u> 8 U.S.C. § 706 ("the reviewing court shall decide all relevant questions of law, interpret **constitutional** and statutory provisions …" and "shall (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action … found to be … (B) contrary to **constitutional** right, power, privilege, or immunity…") (emphasis added); 28 U.S.C. § 1361 (providing district courts power to compel the Government to perform a duty owed to plaintiff); <u>Puerto Rico v. Branstad</u>, 483 U.S. 219, 227-28 (1987) (mandamus relief available to enforce violation of constitutional duty).

Viewing the complaint as a whole and in Plaintiffs' favor, Counts I, II, and V plausibly allege constitutional claims under the Fifth Amendment's Due Process Clause. As previously discussed, Plaintiffs have plausibly alleged claims in Counts III and IV. The APA provisions and the Mandamus Act provide injunctive and/or declaratory relief for constitutional violations. As such, Counts I, II, and V may proceed on due process grounds.

Additionally, Count V plausibly alleges that the Government failed to follow the rulemaking procedures required by the APA and failed to provide a reasoned explanation for departing from prior practice. These alleged regulatory violations are independent of the claims arising under the INA, even after Avila. Although the Eighth Circuit agreed with the Government's current interpretation, the court acknowledged that the Government departed from its prior practice. Avila, 170 F.4th at 1136-37. The court did not hold that the new understanding of the detention statutes permitted the Government to change its established regulatory requirements without following the APA provisions for rulemaking. Id. Plaintiffs plausibly plead facts that the Government did not comply with the APA when enforcing its new policy. (Doc. #1 at 28-29, 40-44). This claim also survives the present motion to dismiss.

Plaintiffs' claims arising under the INA in Counts I, II, and V are foreclosed by Avila but their constitutional claims in all Counts and APA rulemaking claim in Count V may proceed.

**CONCLUSION**

To summarize, the Court has dismissed the following claims: (a) in Count I, the claim arising under the detention statutes which seeks to compel the Government to provide individualized custody hearings before the KC Immigration Court for all detainees apprehended in the interior of the United States who are housed within the jurisdiction of the KC Immigration Court; (b) in Count II, the claim seeking to compel the Government to fulfill its duty under 8

7

U.S.C. § 1226(a) to provide individualized custody hearings before the KC Immigration Court for all detainees apprehended in the interior of the United States who are housed within the jurisdiction of the KC Immigration Court; and (c) in Count V, the claims seeking vacatur of <u>Matter of Yajure Hurtado</u> on the basis that the BIA's decision is contrary to the plain language of the detention statutes and in excess of the BIA's statutory authority.

The following claims survive: (a) in Count I, the due process claim seeking to compel the Government, pursuant to the APA, to provide individualized custody hearings before the KC Immigration Court for all detainees apprehended in the interior of the United States who are housed within the jurisdiction of the KC Immigration Court; (b) in Count II, the claim seeking to compel the Government, pursuant to the Mandamus Act, to fulfill its duty under the Due Process Clause to provide individualized custody hearings before the KC Immigration Court for all detainees apprehended in the interior of the United States who are housed within the jurisdiction of the KC Immigration Court; (c) in Count III, the procedural due process claim; (d) in Count IV, the substantive due process claim; (e) in Count V, the claims seeking vacatur of <u>Matter of Yajure Hurtado</u> on the basis that the BIA's decision is in excess of the BIA's constitutional authority and because the Government did not comply with the APA before enforcing the policy stated in the decision.

The Court will set a hearing on Plaintiffs' pending Motion for Temporary Restraining Order and Preliminary Injunction (Doc. #4). At the hearing, the Court will take up the standing issue and the issues presented in said Motion. Accordingly, it is hereby

ORDERED the Government's motion to dismiss (Doc. #14) is GRANTED IN PART and DENIED IN PART. The claims arising under the detention statutes in Counts I, II, and V, as more thoroughly outlined above, are hereby DISMISSED. The constitutional claims in Counts I, II, III,

8

IV, and V, as more thoroughly outlined above, survive. Additionally, the APA rulemaking claim, as more thoroughly outlined above, survives. It is further

ORDERED the parties meet and confer about availability for the hearing on the pending Motion for Temporary Restraining Order and Preliminary Injunction and then work with the Courtroom Deputy to schedule said hearing.

IT IS SO ORDERED.

Dated: May 14, 2026

/s/ Brian C. Wimes
BRIAN C. WIMES, CHIEF JUDGE
UNITED STATES DISTRICT COURT

9