**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| THE ASYLUM CLINIC KANSAS CITY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:26-CV-00224-BCW |
| KANSAS CITY, MISSOURI IMMIGRATION COURT, et al., | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is Plaintiffs' motion for temporary restraining order and preliminary injunction. (Doc. #4). The Court, being duly advised of the premises, denies said motion.

**BACKGROUND**

On March 17, 2026, Plaintiffs The Asylum Clinic Kansas City ("ACKC"), Harmeet Singh, Virampreet Singh, Plinio Naky Soto Pena, and Osmin Alsonso Vega Alverez filed their Civil Complaint for Declaratory, Mandamus, and Injunctive Relief. (Doc. #1). In the complaint, Plaintiffs challenge "a federal detention policy that is being applied in a manner that forces detained noncitizens to repeatedly file individual habeas petitions in order to obtain relief that federal courts have already determined the law requires." Id. at 1. Plaintiffs name the Kansas City, Missouri Immigration Court ("KC Immigration Court"), the Executive Office of Immigration Review ("EOIR"), Todd Blanche, Markwayne Mullin, and the Board of Immigration Appeals ("BIA") (collectively the "Government") as defendants.

From 1996 through mid-2025, the Government allowed noncitizens who had been living in the United States to be released on bond or parole under 8 U.S.C. § 1226(a), while applying mandatory detention under 8 U.S.C. § 1225(b)(2)(A) to noncitizens arriving at the border. (Doc.

#1 at 3). In July 2025, the Government announced a new policy: all "applicants for admission," as defined in § 1225(a)(1), would be subject to mandatory detention under § 1225(b)(2)(A). Thus, those noncitizens already present in the United States would be treated in the same manner as arriving aliens, regardless of individual circumstances. The Government announced that "[e]ffective immediately, it is the position of [the Department of Homeland Security ("DHS")] that such aliens are subject to detention … and may not be released from [Immigration and Customs Enforcement ("ICE")] custody except by [Immigration and Nationality Act ("INA")] § 212(d)(5) parole …. These aliens are also ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge." Id. at 3-4.

In September 2025, the BIA issued its decision in Matter of Yajure Hurtado, 29 I&N. Dec. 216 (BIA Sept. 5, 2025) ("Hurtado"), which (a) upheld DHS's new interpretation of the detention statutes (§ 1225(b)(2)(A) and § 1226(a)) (the "new policy") and (b) ruled that immigration judges lacked jurisdiction to consider release on bond for noncitizens detained as "applicants for admission" under § 1225(b)(2)(A), even if those individuals had been living in the United States and were previously granted bond hearings under § 1226(a) (the "jurisdiction-stripping component"). Id. at 4. The Government began detaining noncitizens without notice or an opportunity to be heard, regardless of individual circumstances, and detainees across the country challenged their detention under this new policy through habeas corpus petitions. Id. at 5.

Plaintiffs pleaded five causes of action: (I) Violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(1) – Agency Action that is Unlawfully Withheld; (II) Mandamus Action to Compel Officers to Perform their Duty; (III) Procedural Due Process Violation; (IV) Substantive Due Process Violation; and (V) Violation of APA, 5 U.S.C. § 706(2) – Vacatur of the BIA's Decision in Hurtado.

Plaintiffs filed the TRO Motion on March 18, 2026, requesting (1) immediate release or bond hearings for the individual plaintiffs and (2) a declaration that the ACKC has standing to challenge the new policy and the continued application of Hurtado. (Doc. #4). The Court ordered expedited briefing of the TRO Motion. (Doc. #7). However, rather than respond to the TRO Motion, the Government filed an answer to the complaint. (Doc. #8).

On March 25, 2026, the Court of Appeals for the Eighth Circuit issued its decision in Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). In Avila, a split panel of the Eighth Circuit held that § 1225(b)(2)(A) "mandates the detention of unadmitted aliens already present inside the United States" and does not require the Government provide them a bond hearing, regardless of how long the noncitizen has been present in the country. 170 F.4th at 1136.

On April 1, 2026, the Government filed a motion to dismiss ("First Motion to Dismiss") arguing Avila foreclosed Plaintiffs' arguments. (Doc. #14).

On May 14, 2026, the Court issued its Order granting in part and denying in part the Government's First Motion to Dismiss. (Doc. #19). The Court dismissed all claims arising from purported violations of the detention statutes in the INA. The Court further found the following claims survived: (a) in Count I, the due process claim seeking to compel the Government, pursuant to the APA, to provide individualized custody hearings before the KC Immigration Court for all detainees apprehended in the interior of the United States who are housed within the jurisdiction of the KC Immigration Court; (b) in Count II, the claim seeking to compel the Government, pursuant to the Mandamus Act, to fulfill its duty under the Due Process Clause to provide individualized custody hearings before the KC Immigration Court for all detainees apprehended in the interior of the United States who are housed within the jurisdiction of the KC Immigration Court; (c) in Count III, the procedural due process claim; (d) in Count IV, the substantive due

process claim; (e) in Count V, the claims seeking vacatur of Hurtado on the basis that the BIA's decision is in excess of the BIA's constitutional authority and because the Government did not comply with the APA before enforcing the new policy stated in the decision.

The Government then filed a second motion to dismiss on May 20, 2026 ("Second Motion to Dismiss"), arguing the Court did not have jurisdiction over Vega Alvarez's, H. Singh's, and V. Singh's claims because they were not detained within the jurisdiction of this Court. (Doc. #20). In their opposition, Plaintiffs conceded Vega Alvarez's claims were moot and otherwise voluntarily dismissed and/or withdrew Soto Pena's claims. (Doc. #21). The remaining Plaintiffs are, therefore, the ACKC, H. Singh, and V. Singh.

After the Court's Order for the parties to submit briefing on the standing issue mentioned in the briefing of the First Motion to Dismiss and to contact the undersigned's courtroom deputy to schedule a hearing on the TRO Motion, the Government filed a third motion to dismiss on July 14, 2026 ("Third Motion to Dismiss"), arguing that all Plaintiffs lack standing to bring the claims alleged in the Complaint. (Doc. #24). Plaintiffs opposed (Doc. #25), and the Government filed a reply brief (Doc. #26).

On August 5, 2026, the Court held a hearing on the outstanding motions. (Doc. #27). During the hearing, the Court ordered supplemental briefing on the TRO Motion in light of Avila and the current status of the individual plaintiffs (the "Singhs"). The Court asked the parties to address three issues in their supplemental briefs: (1) how does the jurisdiction-stripping component of Hurtado operate and why might its vacatur afford the Singhs redress; (2) how do the Dataphase[1] factors support a temporary restraining order; and (3) what specific relief do the Singhs request. Plaintiffs filed their supplemental brief on August 9, 2026 (Doc. #29), the Government filed its

[1] Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (enbanc).

supplemental brief on August 14, 2026. (Doc. #30), and Plaintiffs filed a reply brief on August 16, 2026 (Doc. #31).

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." Beber v. NavSav Holdings, LLC, 140 F.4th 453, 460 (8th Cir. 2025) (quoting Cigna Corp. v. Bricker, 103 F.4th 1336, 1342 (8th Cir. 2024)). The moving party bears the burden of establishing the propriety of an injunction. Ng v. Bd. of Regents of Univ. of Minn., 64 F.4th 992, 997 (8th Cir. 2023). When determining whether a preliminary injunction should be issued, the Court considers four factors. Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Often referred to as the Dataphase factors, the moving party must establish (1) a likelihood of success on the merits; (2) the threat of irreparable harm to the movant absent preliminary relief; (3) that the balance of equities tips in favor of preliminary relief; and (4) an injunction is in the public interest. Id.; Dataphase, 640 F.2d at 114. Where the Government is a party, the last two factors merge. Nken v. Holder, 556 U.S. 418, 435 (2009).

## ANALYSIS

Plaintiffs seek a temporary/preliminary restraining order that immediately releases the Singhs on reasonable conditions, or in the alternative, sets aside the jurisdiction-stripping component of Hurtado and orders a bond hearing where the Government must demonstrate by clear and convincing evidence that continued detention of the Singhs is justified. (Docs. #4, #29). The ACKC seeks a preliminary order declaring it has standing to proceed in this case and challenge the Government's new policy and the continued application of Hurtado. (Doc. #4).

Plaintiffs argue a preliminary order is appropriate for the Singhs because they will likely succeed on their constitutional and/or APA claims, the threat to their liberty interests cannot be

redressed monetarily, the Government's interests do not outweigh the Singhs' liberty interests, and the public has an interest in protecting constitutional rights. (Doc. #29). Similarly, Plaintiffs argue the Dataphase factors weigh in favor of preliminary relief for the ACKC. (Doc. #4).

In opposition, the Government argues injunctive relief is not available because said relief is barred by Avila and the Singhs have an alternative avenue for relief – filing a petition for writ of habeas corpus in the District of Kansas, where they are detained. (Doc. #31). The Government alternatively argues the four factors do not weigh in favor of granting the Singhs the relief they seek, and therefore, a preliminary injunction should not issue. Regarding the ACKC, the Government has filed the Third Motion to Dismiss the ACKC for lack of standing. (Doc. #24).

**A. Consistent with this Court's prior Order, Avila does not bar Plaintiffs' claims.**

As an initial matter, the Court first addresses the Government's argument that the Eighth Circuit's decision in Avila bars injunctive relief. The Court has already held that Avila does not bar Plaintiffs' constitutional and APA claims. (Doc. #19).

Nonetheless, the Government's repeated reliance on Avila to dismiss this case in its entirety highlights the need for further explanation concerning the interplay between the two separate holdings in the BIA's Hurtado decision with the Eighth Circuit's decision in Avila as applied to Plaintiffs' complaint.

In the complaint, Plaintiffs challenge the Government's new detention policy, as stated in Hurtado. (Doc. #1). The BIA held "Immigration Judges lack authority to hear bond requests or to grant bond to aliens . . . who are present in the United States without admission." Hurtado, 29 I&N Dec. at 225. Hurtado did two things: (1) adopted a reading of the INA to treat any noncitizen who entered the United States without admission or parole as an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) rather than discretionary detention under §

1226(a)[2] (the "new policy") and (2) ruled that immigration judges lacked authority to hear a request for bond from such a noncitizen, regardless of the basis of the request (the "jurisdiction-stripping component"). Id. at 229.

The complaint in this case challenges both parts of Hurtado, primarily under the INA but alternatively under the Fifth Amendment's Due Process Clause and the APA. (Doc. #1). Plaintiffs' TRO Motion focused on the claims arising under the INA; Plaintiffs did not fully develop the due process and APA arguments in the initial TRO Motion. (Doc. #4).

Shortly after Plaintiffs filed the TRO Motion, the Eighth Circuit issued Avila, holding that § 1225(b)(2)(A) "mandates the detention of unadmitted aliens already present inside the United States" and does not require the Government to provide them a bond hearing, regardless of how long the noncitizen has been present in the country. 170 F.4th at 1136. The Eighth Circuit's holding in Avila is consistent with Hurtado's new policy holding. Compare id. with Hurtado, 29 I&N Dec. at 229. But the Eighth Circuit did not mention Hurtado in its decision and did not address Hurtado's jurisdiction-stripping component (i.e., that immigration judges do not have the authority to hear bond requests from any noncitizen detained under § 1225(b)(2)(A) for any reason). See generally Avila, 170 F.4th at 1128. Nor did the Eighth Circuit address an unadmitted noncitizen's right to a bond hearing under other grounds, such as the Constitution or the APA. While Avila foreclosed Plaintiffs' primary claim that the individual plaintiffs were entitled to a bond hearing under the

---

[2] The new policy holding in Hurtado has been the subject of thousands of habeas corpus cases across the country. A circuit split exists among the Courts of Appeals that have addressed the issue. Avila, 170 F.4th at 1136 (unadmitted aliens already present inside the United States are "applicants for admission" "seeking admission" subject to mandatory detention under § 1225(b)(2)(A); Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) (same); but see Santillan Quiroz v. Mullin, 180 F.4th 1226 (10th Cir. 2026) (holding same noncitizens held under § 1226(a) and are entitled to bond hearing); Buele Morocho v. Warden Philadelphia FDC, Nos. 26-1150, 26-1454, 2026 WL 2546223 (3d Cir. Aug. 28, 2026) (same); Guerrero Orellana v. Moniz, Nos. 25-2152, 26-1094, 2026 WL 2352042 (1st Cir. Aug. 13, 2026) (same); Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026) (same); Hernandez Alvarez v. Warden, Fed. Detention Ctr. Miami, 175 F.4th 1258 (11th Cir. 2026) (same); Castanon-Nava v. U.S. Dep't of Homeland Sec., 175 F.4th 828 (7th Cir. 2026) (same); Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026) (same); Barbosa da Cunha v. Freden, 175 F.4th 61 (2nd Cir. 2026) (same).

INA, it left untouched Plaintiffs' alternative claims and left open whether Hurtado's jurisdiction-stripping component could withstand judicial scrutiny.

Plaintiffs are the masters of their complaint. Griffin v. Optum, Inc., 175 F.4th 897, 904 (8th Cir. 2026) (quoting Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 35 (2025)). Plaintiffs have pivoted from their primary argument – a violation of the INA – to their alternative grounds for relief, namely violations of the Constitution and the APA. Cf. Young Am.'s Found. v. Kaler, 14 F.4th 879, 889 n.9 (8th Cir. 2021) ("When it became clear that their alleged injury was not rooted in [defendants'] application of [one theory of recovery], [plaintiffs] had ample opportunity to amend their complaint accordingly."). And Plaintiffs now seek a TRO vacating Hurtado's jurisdiction-stripping component, i.e., to enjoin immigration judges from dismissing bond requests for lack of authority and to require the KC Immigration Court to hear bond requests on the merits. (Doc. #29).

This Court has already held Plaintiffs' APA and constitutional claims survived Avila. (Doc. #19). Again, Avila did not reach Hurtado's jurisdiction-stripping component that immigration judges have no authority to hear bond requests. Consequently, the Government's repeated reliance on Avila does not address the issues remaining in the TRO Motion or the case more generally.

**B. Plaintiffs are not entitled to preliminary injunctive relief.**

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24. "Its primary function is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." Cigna Corp. v. Bricker, 103 F.4th 1336, 1342 (8th Cir. 2024) (cleaned up). "Exercising its equitable discretion, a district court may grant a preliminary injunction when a movant shows [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips

in his favor, and [4] that an injunction is in the public interest." Id. (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); Winter, 555 U.S. at 20).

***1. The Singhs cannot establish irreparable harm.***

The Singhs argue all four factors weigh in their favor. (Docs. #4, #29). The Government argues the Singhs will not succeed on the merits; they do not face irreparable harm because there is an alternative remedy; and the final two factors weigh against injunctive relief. (Doc. #31). Because the Singhs will not suffer irreparable harm absent injunctive relief, the Court declines to address the remaining factors and denies the TRO Motion as to the individual plaintiffs.

A plaintiff seeking preliminary injunctive relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." Choreo, LLC v. Lors, 164 F.4th 667, 669 (8th Cir. 2026) (emphasis in original) (quoting Winter, 555 U.S. at 22). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).

Freedom from physical detention is "the most elemental of liberty interests." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). The Government has detained H. Singh since November 2025 and V. Singh since February 2026. Said detention is a harm that cannot be fully compensated through an award of damages.

The Government argues that the Singhs are not irreparably harmed because they have an alternative remedy and upcoming custody redetermination hearings[3] at the time of briefing. (Doc. #31). In its brief, the Government apprised the Court of custody redetermination hearings for both Singhs, scheduled for August 19, 2026. (Docs. #31-1, #31-2). Based on communication received from the parties via the undersigned's courtroom deputy, the Court understands that both custody

[3] A custody redetermination hearing includes the immigration judge's consideration of bond. See 8 C.F.R. § 1003.19.

redetermination hearings were held and both H. Singh and V. Singh remain detained. Thus, the Singhs have now received what they were previously denied – a bond hearing. Nothing in the current record indicates that vacatur of Hurtado would dictate a different outcome should another bond or custody redetermination hearing be held.

Moreover, the Court agrees with the Government that the Singhs have an alternative remedy, thus depriving this Court of equity jurisdiction to order their release from detention. First Choice Women's Res. Ctrs., Inc. v. Davenport, 608 U.S. 174, 195-96 (2026). The Singhs can seek habeas corpus relief in the United States District Court for the District of Kansas, where they are presently detained. See 28 U.S.C. § 2241; Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004) (jurisdiction over habeas challenges lies in district of confinement).

The District of Kansas sits in the United States Court of Appeals for the Tenth Circuit. Unlike the Eighth Circuit, the Tenth Circuit has rejected the statutory interpretation on which the Singhs' no-bond detention rests, making them eligible for a bond hearing. See Santillan Quiroz v. Mullin, 180 F.4th 1226 (10th Cir. 2026). In Quiroz, the Tenth Circuit held that § 1225(b)(2)(A)'s mandatory detention provision applied to only those seeking admission at the border and not to noncitizens who entered the country without admission and were arrested in the interior. Id. at 1238-39. Because the Singhs are detained in Kansas and the District of Kansas sits in the Tenth Circuit, that court would likely conclude that the Singhs, as noncitizens arrested in the interior, are detained under § 1226(a) and are eligible for a bond hearing (or possible release). Id. at 1247-48. Because of the Tenth Circuit's holding in Quiroz, the District of Kansas has the authority to order such relief.

Because the Singhs have received custody redetermination hearings and they could seek habeas relief in the District of Kansas, they are not irreparably harmed such that they are entitled to preliminary injunctive relief in this Court.

***2. The balance of equities and public interest counsel against granting the ACKC's requested relief.***

In the TRO Motion, Plaintiffs request the Court (1) "[d]eclare that [the ACKC] has suffered a concrete and particularized organizational injury as a direct result of Defendants' unlawful no-bond policy and the continued application of Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025)," and (2) "[o]rder the restoration of bond hearings under 8 U.S.C. § 1226(a) [to] apply to all noncitizens within the jurisdiction of the Kansas City Immigration Court, thereby alleviating the unlawful burdens imposed on [the ACKC] . . . until the full merits of the case are determined." (Doc. #4-1 at 33).

The Court declines to exercise its equitable discretion to issue the preliminary declaratory and injunctive relief the ACKC seeks. The issue of the ACKC's standing is currently before the Court in the Third Motion to Dismiss. (Doc. #24).

In light of Avila, the Court construes the ACKC's second TRO request as seeking vacatur of Hurtado's jurisdiction-stripping component on constitutional grounds or for violations of the APA. Given the breadth and importance of the interests at stake, the Court declines to make a preliminary ruling without full argument and briefing on the issues.

The Court does not reach the merits of Plaintiffs' constitutional and APA claims challenging Hurtado's jurisdiction-stripping holding that immigration judges lack authority to hold bond hearings for noncitizens detained under 28 U.S.C. § 1225(b)(2)(A). However, the other Dataphase factors weigh against issuing preliminary relief at this time. Accordingly, it is hereby

ORDERED Plaintiffs' motion for temporary restraining order and preliminary injunction (Doc. #4) is DENIED.

IT IS SO ORDERED.

Dated: September 21, 2026

/s/ Brian C. Wimes
BRIAN C. WIMES, CHIEF JUDGE
UNITED STATES DISTRICT COURT